22-1812. Mr. Coughlin, how are you? I'm good, your honor. Thank you. Good morning, your honor. Richard Coughlin on behalf of Raymon Walters, and with the court's permission, I'd like to reserve three minutes of rebuttal time. Sure. Thank you. So, in addition to some significant procedural hurdles that present a challenge in this case. Can I just start off with, before we get into any kind of the merits, what is in this case the standard of review, in your view? I'm sorry. What is the standard of review that we should have in this particular case? Your honor, I think it's as following Dorsey and then in preparing for today's argument, seeing that a 12-B-2 argument was presented in Greer and rejected. I think it's got to be plain error. And who disagrees with that? Is there an argument that his trial was what, April of 22? It was, no, I think his trial was in April of 21. 21, okay. And Bruin came out in 22, June of 22, did it not? Right. So, has the law so changed that maybe there should be a different standard for this unique case? I would like it. Think about it. I mean, I think either way that the law, Bruin changed the law. You got Bruin, Rahimi, and now Range on our court. I mean, it's a whole lot of things have looked a different way. I mean, the law in our circuit at the time of this trial was, you know, was it a serious crime type of thing involved or whatever, but life has changed. Yes, it has. And so I, you know, I don't know if you want me to start. No, no, that's fine. Okay. I just throw it out and I'll ask the same question as the government. So you just give them an inkling of what I'm going to ask on that. The first issue is basically who decides at trial. Once a defendant invokes his Sixth Amendment right to counsel, he retains certain constitutional rights that are fundamental to his decision making and how his trial is going to proceed. Whether it's going to, whether there's going to be a trial, whether he's going to testify. Is there a distinction in terms of what a lawyer can stipulate to and what a lawyer can't stipulate to without his client's consent? I think the, I think the, you know, the only workable and the only, the only line that is workable and practical is if anything short of admitting guilt. Is the lawyer can stipulate? Is that the lawyer can stipulate. Like a jurisdictional element maybe. A jurisdictional element, a fact element, a state of mind element. I'm sorry. Go ahead. So let me ask you a question about that. McCoy and Wilson both talk in terms of opprobrium or stigmas and things associated with them. If you look at Wilson, when Wilson is explaining why counsel can stipulate to jurisdiction over the defendant's objection, one of the explanations pointing back to McCoy is that there's no stigma associated with that. It's not even a, it's not even a stipulation that relates to the defendant. What should we do with that language? Your Honor, I don't think, first of all, I don't think it's necessary to the decision. And I don't think that when you step back and try to apply that standard, that it's workable or that it's required. The fact, the reality of trying cases is that there are tactical decisions to be made all along the line. And they, from anything from witnesses to call, questions to ask, cross-examination, and so forth. And to have a lawyer be in a position where they've got a way, you know, does this fall into the opprobrium category? Or does this fall into what I can do with exercising my strategic and tactical decision-making that I've been trained to do and am trying to do to the best of my ability on behalf of my client? And I, you know, so, you know, whether it's a stipulation or any other tactical decision, to add a layer of consideration of stigma when what, you know, what that means in a particular case is just, is unworkable. And, you know, and what, it may be that the jurisdictional element is the most important element in the case. And that these other elements and other factors just aren't important to how the case is going to be tried. Well, let me ask you a different question. So in McCoy, there's also this discussion of objectives versus strategies and how you determine an objective versus a strategy. And then there's a list of examples of objectives, clear objectives, everybody agrees that they're objectives. Things like pleading guilty, the right to testify. Why isn't a stipulation that, as to someone's mental state regarding a crime, too close to the right to testify to say it's not an objective? Because it still allows the lawyer to try the case in a way that doesn't admit guilt. It provides a clear line as opposed to some sort of analysis of how important the question is in a particular case. And, you know, and again, whether it's, you know, this is a good example. This is a bad case. But there was a right way to try it. And the lawyer determined what he believed to be the right way to try it. And that was to keep out evidence of the prior conviction, the nature of the conviction, and so forth. And to try the case on the two remaining issues that had to be proven beyond a reasonable doubt. Exactly what would be kept out. I mean, you have a stipulation. And the stipulation was what? That he had a prior conviction. He was convicted of a crime that he could get a sentence greater than a year. And he knew it. And he knew it, yes. So it would combine. Old chief. And rehave. Yeah. So. And the attorney wanted to put that in. He says no. And the judge says, fine, it's not coming in. So was there any harm in this case, by the way? The harm, I would say. You had to prove it at trial, in other words. You had to prove that. You had to bring a certified copy of the prior conviction. Right. They introduced the prior conviction, what the nature of the prior conviction was. As it turned out, it included what the judge said couldn't go in, which was how much time he served. And the prejudice is, you know, you've got a clear direction from the Supreme Court in old chief. That is based on an analysis that says this evidence can be prejudicial, overly prejudicial. And it's the one place where a defendant can make the government stipulate. And, you know, the district court judge said, well, I can't make a party stipulate. But this is the one place. What should the judge do? What should the judge do if confronted with this scenario? The judge should defer to the attorney, who has a duty to consult with his client. All right. But the client is saying I must stipulate. It's not up to the client. It's not the client's decision. It's the lawyer's decision. Judge Kugler was about as experienced as they come. And basically he said, guess what? Ain't no stipulation. You're going to have to prove it at trial. What's wrong with that? What's wrong with that is. I mean, if the attorney's not happy. No, because now he's got to try a different case and not the case the way it should be tried. And he can't exercise his professional judgment to make those decisions. Instead, deferring to the defendant allows the defendant to override the experience and role of the attorney. It makes the lawyer stand by counsel, in effect. Let me take you back to the test, the test under McCoy, objectives versus strategy. Is there a theme that runs through objectives that would help one to understand what is an objective? For example, a number of the examples that are listed, right to plead guilty, right to an appeal, right to testify, can be linked to like the fifth or sixth amendments. Do you think that when we're trying to figure out what an objective is, it's something like something that leads to a constitutional right? I mean, you know, the objective is, does the client want to be acquitted? Does the client of all charges, does the client want to be acquitted of some of the charges? Does the client, is the client looking to mitigate their sentence? Going back to the objectives that were listed in McCoy, do you agree that deciding whether or not to testify as an objective is left to the defendant? Yeah, and that acts as a check on the attorney and the attorney's prerogative. My question earlier was why is forcing a stipulation about the defendant's mental state not too close to the right to testify? Before you took me to the right to plead guilty or not, assume I agree with you that it's not close enough to the right to plead guilty. What about the right to testify or not to testify? It's just not the same right. It's not the same procedure. It's not the same issue. If you want to exercise your right to testify, then you open the door to cross-examination and all kinds of other evidence, and that's a different decision than whether to stipulate to an element of the offense, regardless of how close it is to pleading guilty or deciding whether to testify or not. But is this, what you're proposing, really workable in the real world? I mean, you're sitting in trial and your client's saying, no, I'm not stipulating that, and you're telling your client, yeah, you are stipulating to that. Somebody's got to make a decision. Right. So I've had clients yell at me in the hall about what witness to call, and one in particular where the witness was going to die, so there was a pretrial deposition of her testimony, and we got to our case and he wanted the witness to testify because he thought it was consistent with what he thought the defense was. But as the case played out, it wasn't. And so I made the call not to call that witness. Right, but this is a little different. I mean, this is the lawyer stipulating to elements of the offense, and the client's saying, no, I'm not going to let you stipulate to elements of the offense. Make the government prove it. That's fine, but he can't pick which elements. He can pick the objective. He can say, I want to go to trial. I want to be acquitted. I want to be acquitted of everything. But he doesn't then get to decide how that's going to happen. Don't stipulate to anything. That's not his call. If he wants to do that on his own, then he's got to decide whether he wants to go pro se or not. We're going to have a standby counsel. But once he invokes his right to counsel, counsel has a role and a responsibility to the client and ethical obligations. And, you know, it's not just in a vacuum. The lawyer decides, well, this is what we're going to do because for whatever. I mean, you're making a professional decision based on the evidence, based on your review of the law and your understanding of how this trial is going to go. What would the defense have been here? I'm having the same problem. Yeah, so the defense would have removed that taint, that prejudice that accompanies the. But the elements of a 922-G1 are what? That you're a felon, that you are in possession, two, of a gun, three, and the gun was went across state lines in order to have a commerce element. Yeah, and they have to prove it was a gun. So in possession of a gun, three, four, that it crossed state lines. Which of those are jurisdictional? Obviously, crossing state lines is because otherwise you're not going to have the criminal statute to begin with. Right. But what are the other three? I think whether it's operable or whether it's an actual gun. I don't know if that's a fact question. I guess the interstate commerce issue or international commerce in this case. But what does Wilson tell us? Wilson tells us that if it's in any way an admission of guilt with respect to an aspect, an element of this particular crime, 922-G1, then shouldn't you kind of back away and say, that's not jurisdictional, it relates to guilt, and therefore it's up to Mr. Walters to make that call? Yeah, I don't think so. I don't think Wilson says that. I mean, I think the context of that case was it was a procedural issue, and that's what it was found on. And McCoy follows a long line of cases. Yeah, was it an FDIC-insured bank? Yeah, where admissions of all kinds of things have been permitted, and there's a line. You can't give up one of those constitutional rights. And there's a concurrence by Justice Scalia in a case not cited but that my colleague provided yesterday, Gonzalez v. United States, where he goes into some detail about the line is constitutional rights, everything else is for the lawyer to decide. It's a concurrence. So I think to move the line away from those constitutional rules and procedures that are, you know, reserved to the defendant just leaves the lawyer at the mercy and whim of the client and not able to provide the best representation they can. And, you know, without, you know, and then what? Then, you know, there's no ineffective assistance possibility because, you know, the lawyer is just the mouthpiece for the client, and he's just following directions. So, you know, he can't, even though he knows that's not the right thing to do, he's exercising, he's not exercising his judgment, he's exercising his client's judgment. Was the admission of the evidence here harmless error? I mean, like even if you had admitted the stipulations? I mean, you know, my best argument is that the old chief says it's prejudicial, and I, you know, this is a. . . It's a big hill to climb to say it's structural. Right. Which is in effect what you're saying. Can I just switch to whether 922G1 is unconstitutional as applied to Mr. Walters?  So, as I understand the laws it's developed, somebody who is dangerous, in the sense of posing a threat of physical harm to someone else, is, can have their, can be disarmed. So let me ask you. So you have Mr. Walters was arrested with hollow point bullets in the gun after he ran from police. His pre-sentence report suggests he has four drug convictions, receiving stolen property and DUI. He's been arrested an additional eight times, two of which were possessions of a weapon. He's been in contact with law enforcement every year since he turned 19, and he has a violation of probation on his record. Is that somebody that's dangerous? I think that's a different question than whether he can be prosecuted for illegal possession of a firearm based on his prior convictions for drug distribution. And the reason I say that is because I think that the danger that is identified, and I know Pizzolatti has said, common sense says, crimes of violence and burglary and drug dealing are all dangerous. In their language, you look at the individual's entire body of work, so to speak. There is. There absolutely is. And I mean, Pizzolatti is very clear about that. Look at the entire criminal record and the conduct between the time of the motion or whatever it is and the hearing. Right. So you take everything into account. The question here is, if you get to that, you have possession with intent to distribute. Is intent to distribute something that is dangerous or not? And one can make an argument. You have to look at, you know, was he just dealing out of his garage or was he actually with a gang? But at the same time, the points being made by Judge Restrepo seem to say, and Pizzolatti seems to say, you can look at the whole shoot and match, bad pun here, didn't mean that, and see what this person's life is like and make a call as to whether this person is a, puts others in fear of their physical safety if he comes out armed onto the street or anywhere. That, yeah, I can't just deny that's what Pizzolatti says. And I think, you know, Range says that as well. And Williams. And Williams. And I guess my, you know, my fundamental issue is the extension of the crime of violence umbrella to drug distribution, which, as Your Honor has suggested, you know, can involve a whole range of activities and roles and, you know, and may in some circumstances absolutely be a good fit with crimes of violence. And I think Quarles explains why burglary fits that category, because of its inherent potential for violent conflict if you're breaking into a house to commit a felony in there. Is the same logic extended to drug dealing? No, I don't think it does. I think when you apply that analysis and you look at the scope of activities that can be involved, and, you know, some of the genesis for that is Justice Kennedy's concurrence in Harmelin, which was an Eighth Amendment case about the life sentence for someone drug dealing, and based in part on the dangers of drug dealing, including the harms to society in general, the possibility that people involved in drug dealing or drug use are going to commit theft and fraud and whatever to get more money. And so it's a more – it becomes the more sort of general kind of danger that I don't think is equivalent to what's at issue in crimes of violence. I want to take a step back and understand how you think this all works. So is it your position that in every 922G1 prosecution that doesn't involve a – where the underlying conviction doesn't involve a crime of violence, the district court has to do an individualized danger assessment? And when? That was going to be my follow-up. You know, I think now that would have to be in response to a motion to dismiss. I don't – you know, if there's no motion, then there's nothing for the court to – Well, if someone raises it, your answer is yes, there must be an individualized assessment in all instances. Unless it's a crime of violence. You're going down that categorical rabbit hole? Yeah. You know, I can understand the resistance to that. Is it before trial? Is it something that's decided by the judge before trial? Is it wrapped up in the 922G1 jury trial? Well, I think – no, I don't think it's an element of the offense in the same way that the ACCA is. It's just – you know, it's not specified. It's a question of how extensive the disarmament that is involved in 922G can be extended. And, you know, I – so – and, you know, and now we're in a different posture than we were at the time Mr. Walter's case went to trial in terms of how the law is developed and what the standards are and considerations are, including the recent record of the defendant. So what are you asking us to do? Send it back? Or are you asking us to determine whether or not this individual is dangerous? I don't think – I guess what I would ask is that the court conclude that a blanket extension of disarmament based on danger to drug distribution can't – does not apply in a global sense. Okay, what about – And then a remand, you know, consistent with pizzolitis to determine whether he, in fact, was based on that record and his other circumstances of danger. Thank you. Thank you very much. Thank you. Good morning, Mr. Romano. How are you? Good morning. May it please the Court, John Romano for the United States. I'll start with the first issue. The government and the district court should not be required to accept a stipulation to a non-jurisdictional element. Can we start with the standard review? Sure. Can we start with the standard review? Usually, if you don't bring it up, it is plain error. But because this was pre-Bruin, pre-Rahimi, pre-Range, pre-pizzolitis, et cetera, at least for the 922G1 challenge, shouldn't this be a bit different here? I don't think so, Your Honor. I mean, Greer was pretty clear that even if there's a wall of precedent, you need to raise it and preserve it in order to get the better standard review and appeal. And that's not what happened here. And I would also point out, Your Honor, that maybe this is the most favorable circuit of all where he could have raised this claim. This Court has been entertaining as-applied challenges to 922G1 for over a decade. And in Bindrup, it upheld 922G1 as-applied challenges to 922G1. There's a Ninth Circuit case called Duarte, which is 101F4, 657, and it came out in 2024. And the later was in 108F4, 786. It found good cause to review de novo when there's been a change in the law. And why would this case not fit under that particular rare instance? Well, first of all, Duarte was vacated. And the en banc panel has – the en banc court has now heard argument and has not reissued an opinion. So I don't know how the Ninth Circuit will ultimately come out on that. But, number two, again, I don't know what – Although only 11 will do it. I don't know what the state of the law in the Ninth Circuit was. But, again, in the Third Circuit, this Court has been amenable to as-applied challenges for a very long time, including an opinion you wrote for the en banc court. So if he wanted to raise an as-applied challenge, he was free to do so. And that would have been entertained in this circuit. And I just think that under the – what the Supreme Court has told us is even if you have a wall of precedent blocking you, you still have to raise it. And that's exactly why Greer was heard as a plain error claim. I mean, no court had ever held that 922G1 had this extra mens rea element. But he was still held to plain error review and appeal. So I think that that would apply here as well. Okay. Turning to the first issue for a second, I think this is an interesting case. I think the Supreme Court and this Court has laid out some things are for the defendant alone. Some things are for counsel. But there's sort of two issues that are sort of lurking there that aren't in those two lists. Number one, what happens when a defendant expressly objects? And number two, what about the stipulation to an element of the offense, especially a mens rea element? Neither of those things appear in any of the lists that have been provided. So let me just start with number one, the express objection issue. I would say that that has been held as a very, very important factor in cases like this. We cited in our brief the Williams case from the Fourth Circuit. That was a stipulation to the admission of evidence. And what Williams said is, where a defendant objects to the introduction of a stipulation that is nonetheless introduced at trial, a district court abuses its discretion. So an express objection carries something. It's more weight. It means something. I would look at McCoy itself, and let's look at both the reasoning of McCoy and the outcome of McCoy. McCoy favorably cites Justice Scalia's concurrence in Gonzales. And what did Justice Scalia say there? Action taken by counsel over his client's objection has the effect of revoking counsel's agency with respect to the action in question. Now, I don't know how far that goes. I think you could go very far down the line and get to very weird situations. I mean, I don't think, I think everyone would probably agree if the counsel is cross-examining a witness, you know, defendant can't jump up and say, you have to ask him that question. I don't think anyone would say that. But the objection means something in certain spheres here. And then let's just look at the result in McCoy. McCoy and Nixon, literally the same thing happened. Counsel gets up, admits guilt. They're both opinions by Justice Ginsburg, but they come out in very different ways. And what's the only distinction between the two? In McCoy, the defendant expressly objected. So I think that express objection is something that is critical here. I want to just point one more opinion that wasn't in our briefs. I sent it to Mr. Coghlan, so I want to make sure that you have it as well. It's out of the Ninth Circuit. It's called United States v. Reed. That's 918F3-712, and that's from 2019. And that's applying McCoy to a counsel who makes an insanity defense over the defendant's objection. And the Ninth Circuit said, can't do that. You have the defendant's express objection here. So the other part I wanted to talk about was, what about the stipulation to an element? Well, that's not in either category either. And if you look at the dissent in McCoy, Justice Alito raises it, actually raises a 922G1 prosecution and says, what happens if the defendant wants to object to a stipulation as to the prior felony conviction? And Justice Alito says, well, that's an open question. Don't know. No one's ever decided it before. So I think here what you have is these two things together. So where do we look? Well, we have McCoy helps us, and I think we have a very interesting and favorable and thorough opinion in Wilson. And what is Wilson telling us? Well, if it's a jurisdictional element, that's fine because it doesn't really involve the defendant. The defendant doesn't have really any stake in arguing whether, you know, Wells Fargo is, you know, federally insured or not. And number two, it doesn't trigger any opprobrium to say, yeah, Wells Fargo is, you know, federally insured. Here, let's think about what was happening here. Counsel saying, I want to tell the jury that you knew at the time you allegedly possessed the gun that you were a convicted felon who had been, you know, convicted of a crime carrying a punishment of more than one year. And the defendant saying, well, you know, I don't want you to tell the jury that. And the defendant said, you know, counsel saying, well, too bad, I'm going to tell them that. That's going way too far. And, you know, I think that Judge Kugler was right here in saying, I can't accept that stipulation because he's possibly injecting structural error into the whole trial. Well, I mean, it's like if you, on the government side, the prosecution sides say, well, it's up to counsel, you're adding an issue for appeal that you otherwise need not add. An issue that has no, we can't even show, you know, harmlessness, right? I mean, it's structural error. It's going to go back for a retrial. So that's a big. I mean, yeah, so one can easily understand why Judge Kugler did what he did. Yes. So I would say, again, looking at those two things that are present here, it's a stipulation to a non-jurisdictional element, and there's an express objection. Those two things combined, I think, mean that there's no way that the government should have been forced to accept the stipulation and that Judge Kugler did the right thing, did not abuse his discretion by saying, well, I'm not going to accept that stipulation. I'll allow in this limited evidence and go from there. Are there any issues with the amount of evidence he admitted? I don't think so, Your Honor. I mean, there's an issue, as Mr. Coughlin said, something slipped in that maybe it's unclear. And I have a footnote about this in the brief. It's unclear what the ruling was. The government wanted to introduce both the judgments and another piece of paper that had the time served. It was a calculation. In light of the sentence, right. Yes. And Judge Kugler said, no, I'm not going to let that in. But the judgment itself had a, if you look at the record at the bottom, it has a jail credit calculation on it. So it's unclear, I think, what he meant. But I would point out that defense counsel himself is the one who redacted those documents, and defense counsel had also pointed out to the judge, that that document said that. So what, in a perfect world, right, what should the judge have admitted? Well, I think he should have admitted that, quite frankly, because that's probably the best evidence. I mean. The length of the sentence? Probably, yeah. I mean, that's the best evidence that he would have known that he was convicted of something that carried a punishment of more than a year. And quite frankly, it wasn't particularly prejudicial. I mean, it was 400 days, and he had been, the jury was told he was convicted of crimes carrying, you know, he was sentenced to three years in prison. So I'm not really sure why it's overly prejudicial to tell the jury, yeah, he was convicted of his three years, you know, got a three-year sentence, but only served 400 days. So I don't think that was really prejudicial at all. But, yeah, I think under Goldman, Judge Cougar did the right thing. He admitted the name of the conviction, he allowed, you know, when it came, when it was from X number of years ago, and the length of the sentence. And I think under Goldman, that was perfectly appropriate. I mean, the problem you have here is just a practical one. It's sort of like in my days of practicing, you'd be up before a judge, and the judge would be kind of asking questions of the witness too often, and you just want to say, would you just let me try my case and stay out of this? In this case, this is where the counsel or the client is, in effect, calling the shots, and in a way that the attorney, who's more experienced, obviously, thinks is detrimental to his case. And what can that counsel insist on and what can't? That's really what it comes down to. Yeah, I think that's right. And I think that Mr. Coughlin's right. I mean, most of the time I think counsel can, you know, has leeway to make all these decisions. But is it too far when it's this particular element, especially where the defendant is actually voicing an objection? And I think normally that would be perfectly fine. But when the defendant stands up and says, no, no, no, no, that's where I think he has to put a halt to it and say, okay, we're not going to make the defendant eat that stipulation. Is there any sort of theme that runs through what is an objective? Like something that if you have to explain to someone, if you have to write an opinion, the defendant gets to determine the objectives, an objective he is. What do you say after that? I think it's linked to the factual guilt. I mean, I think that Judge Bevis was right in Wilson. I think that that's where it falls. You know, the defendant has a right to say, I don't want to be telling the jury that I did that. You know, and there is a problem, I think, with telling the jury. I mean, you're basically telling the jury, on the day I had this gun, I basically knew I shouldn't have had it. I mean, like I knew. That's something I think the defendant could say, no, no, no, no, I'm not going to let you do that. But I do think this is very hard to draw lines. I mean, if you read Justice Scalia's concurrence in that Gonzalez case, he's struggling with this. And I think he comes to the conclusion that basically the counsel should be allowed to do anything he wants until the defendant objects. It doesn't matter what they are. So it's hard to, I think, draw lines here. But I think that the Wilson opinion has a pretty good read on where it should be. What about the second issue here? Sure. I think it's definitely plain error, Your Honor. I mean, it's a plain error review. And after Dorsey, I mean, the way Dorsey characterizes it, Mr. Walters has to show it's that his disarmament is not glaringly inconsistent with range. And it's, I mean, it's not. He is nothing like range. I mean, as you pointed out, he has many, many convictions. I think three or four for drug distribution. There's three for drug distribution. They're not decades ago. They're relatively recently. Unlike Mr. Range, he didn't go and seek a declaratory judgment. I mean, he had the gun on him. But here's the question. Who is it, who best can make that decision? A trial judge who can make findings of fact and does the sentencing, or an appellate court looking essentially at what? Don't say the categorical approach. Perhaps somebody might say that. Well, at this stage, we're at plain error review. So I think this court is perfectly in a position to say, no, he can't show plain error. I mean, there's no court, I don't know of any circuit court, that has held 922G1 unconstitutional as applied to someone with drug trafficking convictions. So that should be the end of the story. Now, in the future, defendants will bring as applied challenges in the district court. And at that point, the district court will have to, like facility says, look at everything. When is that done? If we're going to give some direction to district courts, which I know they're asking for, when's the appropriate time for that decision to be made? Your colleague is suggesting it would be a pretrial challenge of the indictment. Yeah, I think it has to be a Rule 12 challenge and say, this doesn't apply to me. Right? I mean, I think Williams had a way of doing it. I don't know how this circuit will come out. I know that some opinions have also looked at, well, in what posture are we here? Like range, for example, broad declaratory judgment action. That makes sense. I mean, I don't know if you're required to do that, but that certainly shows that you're in good faith looking to follow the law, whereas someone who just violates the law willy-nilly may be not as good a footing as someone who brings a declaratory judgment action. Let's just take this case and add a couple of facts or non-facts, perhaps. Possession of, let's say, marijuana with intent to distribute. The person has a small group of three or four friends that he's buying marijuana and he's selling it out of his basement or garage or whatnot. There's no guns involved or anything like that. Versus somebody who's actively involved with a gang that's selling the  marijuana. Those are pretty different in terms of dangerousness, are they not? Don't say category, GoPro. I would say, yeah, I would agree with you. So if we were in the right posture here, if that were the facts of the case and the defendant brought an as-applied challenge before trial, then maybe this court's view would be, okay, not every drug trafficking conviction is a disqualifier. I think that's what the Sixth Circuit basically did. The Sixth Circuit said anyone could bring an as-applied challenge. It doesn't matter if you committed murder, but it's unlikely that you're going to win. Maybe drug trafficking and burglary cases, things like that, maybe we're looking a little bit more closely at what are the facts of that case. How long ago was it? Is this 20 years ago? Is this 30 years ago, like, range? Or is this five years ago? That's maybe a distinction here. What has happened in the interim? I mean, there's all sorts of things, I suppose. It does argue for an individualized assessment, does it not? Yeah, and I think that's what the Sixth Circuit did. But I think that there are probably maybe presumptions or maybe, again, I think that's what the Sixth Circuit did as well. You know, you've committed a crime of violence, serious crime of violence. What would you possibly be able to show that would overcome the sort of presumption of dangerousness? So do you think the best path forward for Walters, right, would be for this court to determine that 922G is not unconstitutional as applied to him, or do we send it back to the district court in New Jersey to make that determination in the first instance? No, I mean, there's no reason to send this back. Because, again, on plain error review, he can't come close to carrying his burden of showing that there's a plain error has been committed here. So your position is for Walters, plain error review, you don't get there. But leave open for another day someone who properly raises it. Yeah, I mean, I don't think this is the right case to really, I mean, there's a lot of cases percolating through. I mean, on plain error review, I don't know if this is the right case to be making that determination. But for Walters, he's out of luck. I mean, of course he says he can't show he's, you know, it's glaringly inconsistent with range, and it's not. He's nothing like range. So I think that that's an easy one here. For the future, I think that where the court's going, I think, is bring an as-applied challenge before trial, and maybe the guidance is following something like the Sixth Circuit, maybe not. I mean, I think this court's case law is a little bit different than the Sixth Circuit's is, so I don't know that you would necessarily follow Williams exactly. But usually what you're thinking about way before trial is the trial coming up, and you're saying to yourself, you know, somebody in a particular case, I might beat this. I'm not going to think about anything relating to a gun pre-trial. If I'm convicted, I've got to wait until my sentence is complete, including supervised release. So wouldn't you think about it post-trial in most cases? I think this should be pre-trial, Your Honor. I mean, you're saying that this statute as one. If I'm convicted of this crime, I just want to know now if I'm convicted of this crime at trial, I can get my gun rights back afterwards? How does that work, pragmatically? I mean, the judge is going to look at you like, huh? No, that's what I'm saying. I think that this all has to be. It's a motion to dismiss the indictment. It has to be coming before trial. Yeah, I mean, you're saying that this statute shouldn't be applied to me because, yes, it applies to a broad range of people under the writing of the, you know, the plain text of the statute, but not for people like me. Okay. Maybe we're saying the same thing. A motion to dismiss the indictment, I understand.  Thank you very much. That's the U of M. Thank you. I don't really have much to add. Two things. I don't think that determining that the attorney has the authority to make decisions, everything short of capitulation is structural error. I think it's consistent with where the lines have been drawn or suggested. You know, the issue of opprobrium, I think we talked about it. It's one thing to admit a triple homicide or whatever it was, and in a death penalty case where the attorney's objective is to fight the case at the death penalty phase as opposed to, and trying to gain some advantage by that admission, whereas the client has a, and McCoy talks about that, it's a weird situation because of the nature of death penalty litigation. But, you know, anything short of that, I don't, you know, is not structural error. And the only other, you know, on the plus side for Mr. Walters, when he was arrested and brought to federal court, the government moved for detention and he was released on a $100,000 personal recognizance bond. And so, you know, at some point there was a determination about dangerousness and risk of flight. And I just add that. Bill was revoked after he was convicted. If this case were remanded to consider under 922 G1 as applied, it is plain error because it wasn't brought up. How do you overcome that here with this particular background record? You know, I think that he would be entitled to develop that mitigating evidence, that evidence of good conduct. I mean, he also he had a decent work history. He was he he had his license revoked and was riding a bicycle. So, you know, I mean, he did do he was doing some things. And, you know, and whether also I think there need to be more context for what those prior convictions involve. And to the extent that they reflect somebody who I think, you know, by the sentences he was given, was probably a very low level street dealer, not involved in any organization, sort of occasionally out on the street. You know, that that's, you know, that that's also a factor that would need to be developed further. Thank you. Thank you. Thank you, Counsel. Counsel, thank you very much for your briefing and your arguments. We're going to ask for a transcript of this and I'll ask the government to pick up the bill, so to speak.